UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GARY CIFIZZARI,
*Plaintiff*,

*v.*                                        C.A. NO. 4:22-cv-40139-MRG

TOWN OF MILFORD, ET ALS.,
*Defendants*

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM ADDRESSING
THE COURT'S INQUIRIES, IN SUPPORT OF SUMMARY JUDGMENT**

NOW COME the Defendants who respectfully submit the following memorandum addressing this Honorable Court's questions as listed in its Show Cause Order dated May 23, 2025.

**I.     Michael Cifizzari's Confession**:

**A.     Justiciability: Does Gary Cifizzari have standing to contest the voluntariness of Michael Cifizzari's confession?**

**Defendants' Response**:  Plaintiff does not have standing to contest the question of voluntariness. Since "[i]t is axiomatic that Article III standing is a constitutional precondition to a federal court's power to adjudicate a case," this Court must confirm that standing exists. Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 44 (1st Cir. 2005). It is settled law that "when the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-562 (1992); See also, Perkins v. Lukens Steel Co., 310 U.S. 113, 125 (1940) (plaintiffs lack standing because they failed to show injury to "a particular right of their own"). "[T]he plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner v. Genzyme Corp., 823 F.3d

1

724, 731 (1st Cir. 2016). To have standing, a plaintiff must establish, among other factors: that the injury is "fairly traceable to the challenged action. "U.S. Dep't of Health & Human Servs., 923 F.3d at 221-22 (quoting Lujan v. Defense. of Wildlife, 504 U.S. 555, 560 (1992)). "There must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. at 561.  Here, the alleged injury at issue is not traceable to the Milford officers' conduct because "it is 'indirect' at best and relies on the actions of third parties." R&D Master Enters. v. Fin. Oversight & Mgmt. Bd., 75 F.4th 41, 48 (1st Cir. 2023). Michael Cifizzari's confession in Milford did not implicate his brother, Gary Cifizzari, and Milford officers did not participate in Michael's State Police interrogation, during which he did implicate Plaintiff in the murder.  Plaintiff's "claim of injury cannot support standing because the injury alleged is not fairly traceable" to the Government conduct Plaintiff challenges as unlawful. Allen v. Wright, 468 U.S. 737, 756 (1984). "The lack of traceability alone is dispositive of plaintiff's standing claim." Beaudoin v. Healey, 701 F. Supp. 3d. 45, 48 (D. Mass. 2023).  Being "[m]indful of the bedrock proposition that a plaintiff must "be himself among the injured" (Lujan at 563), Plaintiff's failure to plausibly allege or prove that he suffered an injury in fact as a result of Michael Cifizzari's confession to the Milford Police means that he has no standing to contest the voluntariness of that confession.

    **B.**    **Issue Preclusion**:

    ***i.***    ***Was the issue of the voluntariness of Michael Cifizzari's interrogation at the Milford Police station fully litigated in Gary Cifizzari's criminal proceedings?***

**Defendants' Response**:  Although Plaintiff unsuccessfully pressed other issues on appeal, the voluntariness of Michael's confession was not one of them, as it was not introduced by the prosecution. It was never the prosecution's theory that Plaintiff's guilt was proven by Michael's

confession to the State Police, and nor was it Plaintiff's defense that Michael's confession was involuntary or coerced, but the opportunity was still his to press the issue. It is undisputed that Michael's confessions could have been, but were not, introduced at Plaintiff's trial. (Def. SUMF ¶233). Both on appeal and in his 2019 New Trial Motion, Plaintiff did not contend that any conduct by the Milford Police, including Michael's questioning, was improper or violated his rights, as they were not introduced. (Def. SUMF ¶237)

> ## ii. *What reasons exist that justify affording Gary Cifizzari a chance to relitigate whether Michael Cifizzari's confession was coerced?*

**Defendants' Response**: Just as Plaintiff lacks standing to contest the voluntariness of Michael Cifizzari's confession to the Milford Police, he similarly lacks justification to relitigate whether the confession was coerced, because (1) there is no causal nexus (i.e., "traceable to the challenged action") between Milford's interview with Michael and Plaintiff's identification, investigation, indictment, arrest and conviction; and (2) Plaintiff's purpose in seeking to relitigate the issue is to blur the otherwise bright distinction between the separate Milford and State Police questioning to conflate the two, whereas only the State Police interrogation identified Plaintiff as a suspect.[1]

It is well established under Federal law that a defendant who was not a party to the earlier action may invoke the doctrine of collateral estoppel if the plaintiff had a full and fair opportunity to litigate the issue, and "if equitable considerations otherwise warrant precluding relitigation." Fidler v. E.M. Parker Co., 394 Mass. 534, 541 (1985), citing Allen v. McCurry, 449 U.S. 90, 94 (1980)("res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudications.") Here, Plaintiff presents no evidence in the record that he did not have an

---

[1] Plaintiff conceded as much in his New Trial Motion, wherein he emphasized that Milford's interview did not ask about Plaintiff, and Michael only mentioned him when questioned by the State Police. (Def. SUMF ¶¶145-146)

104319905

opportunity to litigate the issue of Michael Cifizzari's confession in the Milford, only that no such evidence was presented by him on the issue. See Boston Sci. Corp. v. Schneider, 983 F. Supp. 245 (D. Mass. 1997)("A party is denied a full and fair opportunity to litigate an issue if 'he did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim. . . [i]n the end, decision will necessarily rest on the trial court's sense of justice and equity.'"), holding that issue preclusion was appropriate because the party seeking to relitigate issues had full access to discovery on the issue in the prior litigation it was seeking to relitigate. Notably, Plaintiff and Michael Cifizzari were represented by the same law firm, Monopoli, Brennan & LeBlanc.[2]

II. **Failure to Investigate**:

   i. *What non-hearsay evidence in the record can support a claim for failure to investigate?*

**Defendants' Response**: None. Milford officers had no substantive role in Plaintiff's investigation – from his identification as a suspect to his conviction – which removes Milford officers entirely from (1) having knowledge of the State Police investigation, and (2) having a duty to conduct additional inquiry. There is no evidence in the record suggesting Milford participated in State Police investigation of Plaintiff, or had "an obvious reason to doubt"[3] that Plaintiff either had committed or had not committed the murder. There is no evidence in the record that the State Police or District Attorney shared information about their investigation of Plaintiff with the Milford Police officers. Finally, Plaintiff's attempt to attribute direct or constructive knowledge by

---

[2] Michael Monopoli, Esq. represented Michael Cifizzari, and Dennis Brennan, Esq. represented Plaintiff.
[3] Abubardar, 542 F. Supp. 3d 69 at 75, quoting Tanguay, 787 F.3d at 53-54.  Both cases relate to claims against officers who directed and controlled the investigations, whereas there is no evidence in the record that Milford officers had knowledge of what evidence the State Police and District Attorney had proving that Plaintiff murdered Ms. Schiappa. In comparison, the Milford officers' role was more akin to that of Conway's Sgt. Broyer in Tanguay, who provided local information about the suspect, Tanguay, to NH State Police Trooper Nolet, who was in charge of the investigation and who filed the criminal complaint, but who the First Circuit concluded had omitted information from Sgt. Broyer when she sought the search warrant, and concluded further that she should have conducted a further inquiry.

4

104319905

Milford Police of the role of Michael Giroux in the murder have been refuted by the Defendants in their summary judgment pleadings.

> ii. *Is there evidence in the record that was contemporaneous to the investigation in 1979-1984 that could support a claim for failure to investigate?*

**Defendants' Response**: Milford Police Officers did not coordinate, direct or control the homicide investigation, and it remains undisputed that they played no role in the investigation of Plaintiff. Other than Milford Officer Chianese having been directed by State Police Sgt. Doheny to accompany Trooper Meier to interview Plaintiff, after he was implicated by Michael, at which Chianese asked no questions (SUMF ¶¶160, 161), Milford played no other investigative role. Moreover, there is no evidence in the record which suggests that further investigation by the Milford Police was "potentially available had [it] inquired further," (Abubardar, 542 F. Supp. 3d 69 at 75) or that the Milford Police "had an obvious reason to doubt" Plaintiff had murdered Mrs. Schiappa. Id., quoting Tanguay, 787 F.3d at 53-54.

However, any such scrutiny of the actions or inactions of the Milford Police officers would miss the mark entirely because they did not investigate the Plaintiff and did not possess the facts and evidence (primarily dental) which the State Police and the District Attorney introduced to support Plaintiff's indictment, arrest and conviction. Even if, according to the Tanguay decision, "[a]ll that is required to trigger an officer's duty of further inquiry is her knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations," Milford officers, as non-participants in Plaintiff's distinct investigation, were not, and would not have been, "confronted with such a red flag," to enable it to look into the matter further. Tanguay at 53.[4]

---

[4] The First Circuit's Tanguay decision only related to conduct of State Police Trooper Nolet, who directed the investigation and filed the criminal complaint, whereas no court appraisal was offered to Sgt. Broyer of the local Conway Police, who did neither.

104319905

Respectfully submitted,

The Defendants,
By Their Attorneys,

/s/ *William B. Scarpelli*

William B. Scarpelli, BBO #560034
wscarpelli@morrisonmahoney.com
Joseph H. Caffrey, BBO #544570
jcaffrey@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone:   617-439-7500

## CERTIFICATE OF SERVICE

I, William B. Scarpelli, Esquire, attorney for the defendants, hereby certify that I have this day filed the foregoing to counsel by electronic email to:

Mark Loevy-Reyes, Esq.
Loevy & Loevy
398 Columbus Avenue, #294
Boston, MA 02116
mark@loevy.com

William S. Smith, Esq.
The Law Office of William S. Smith
206 Worcester Road, P.O. Box 585
Princeton, MA 01541
holdenattorney@gmail.com

Date:  June 3, 2025

/s/ *William B. Scarpelli*

William B. Scarpelli

104319905