THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARY CIFIZZARI, ) | |
| ) | NO. 4:22-cv-40139-MRG |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TOWN OF MILFORD, *et al.* ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff GARY CIFIZZARI, under the Court's Order to Show Cause (Dkt. No. 136), submits this supplemental memorandum in opposition to Defendants' Motion for Summary Judgment:

Plaintiff asks the Court not to lose the forest for the trees in deciding Defendants' request to find that Michael Cifizzari's fabricated and coerced confession should be allowed to continue to harm Plaintiff. That "confession" initiated Plaintiff's wrongful prosecution, his counsel did not move to suppress it, and it *was* introduced at Plaintiff's trial. Plaintiff's fabricated evidence claim about it should be heard by a jury.

Even if Plaintiff's counsel had moved to suppress Michael's "confession," counsel would not have had the evidence to fully litigate the issue because Defendants withheld it, and counsel thus lacked the proof of the falsity of the "confession." To find that Michael's hamstrung motion to suppress should somehow bind Plaintiff here would further a horrific injustice.

For Plaintiff's failure to investigate claim, Defendants Liberto and Small had evidence to doubt the case against Plaintiff and his brother and to investigate the true murderer, Michael Giroux.

### I.  MICHAEL CIFIZZARI'S "CONFESSION"

#### A.  Plaintiff has Standing to Contest Michael Cifizzari's "Confession"

The Court requests argument about whether Plaintiff has standing to contest the voluntariness of Michael's "confession." But voluntariness is not implicated in Plaintiff's fabrication claim. His maintains two stand-alone claims for due process violations caused by Defendants' fabricating Michael's "confession," only one of which relates to voluntariness.

The first type of due process claim stems from Defendants knowingly fabricating a statement/confession. A police officer who manufactures a suspect's or witness's statement and knows it to be false violates due process when that fabricated evidence is used to deprive the defendant of liberty. *See, e.g., Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004); *Avery v. Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017); *Petty v. Chicago*, 754 F.3d 416, 423 (7th Cir. 2014); *Waters v. Town of Ayer,* No. 04-10521-GAO, 2009 WL 10728977, at *15 (D. Mass. Feb. 27, 2009) (Assisting vulnerable witnesses in fabricating a story is a clear due process violation.") (citing *Limone*, 372 F.3d at 44-45). This type of claim cannot be made when police merely coerce a suspect or witness to make a statement with no reason to know it is false.[1] *Id.*

A second type of claim occurs when police illegally coerce a suspect to incriminate himself by way of an involuntarily confession violating the Fifth Amendment when that confession is used in the criminal case. *United States v. Hufstetler*, 782 F.3d 19, 21-22 (1st Cir. 2015) (citations omitted). A coerced confession is one that is not "the product of a rational intellect and a free will." *Id.* (internal quotation marks and citation omitted). This Fifth Amendment claim depends on the suspect *actually incriminating himself*, and the claim cannot be made when police fabricate a statement never given or adopted by the suspect. *See Taylor v. Chicago*, 80 F.Supp.3d 817, 825 (N.D. Ill. 2015).

---

[1] Given the law's distinction between coerced evidence and fabricated evidence, police coercion of a third-party violates due process if police suppress the tactics they used to coerce the witness to provide a statement, which is a separate *Brady* due process claim here as stated in Plaintiff's opposition to summary judgment. *See Avery*, 847 F.3d at 439.

The two separate constitutional violations can occur simultaneously: when an officer manufactures a confession that the officer knows is false (*e.g.*, because the officer scripted it), and then the officer convinces the suspect to adopt that confession against his will (*e.g.*, by abusing a suspect's mental incapacity), and the resulting confession is used in the criminal case. Both the Fifth Amendment and due process are violated, and the conduct causing both violations overlaps. *See Harris v. Chicago*, 2015 WL 1331101, at *5 (N.D. Ill. Mar. 19, 2015). Neither theory requires the jury to weigh in on voluntariness as an element to decide the stand-alone fabrication claim.

Construing the facts in the light most favorable to Plaintiff, Michael's "confession" was knowingly false, and Defendants used it to further the prosecution against Plaintiff, depriving him of his liberty. Such a claim based on another's confession/statement is actionable under a fabrication theory. *See Waters*, 2009 WL 10728977, at *15; *see also Taylor v. City of Chicago*, No. 14-cv-737, at *15-16, (N.D. Ill. Sept. 23, 2019) (denying summary judgment on fabrication claims for purported confessions of third parties); *Saunders v. City of Chicago*, No. 12-cv-9184, 2014 WL 3535723 (N.D. Ill. July 11, 2014) (recognizing the existence of fabricated evidence claims including claims that others' were coerced to confess).[2]

### B. Estoppel Is Not Proper Here

This is not to say that the facts surrounding the fabricated confession related to voluntariness are not relevant. Michael's mental state and susceptibility to adopting Defendants' fabrications is evidence that a jury should consider. Issue preclusion does not bar this evidence.

> **1. The voluntariness of the "confession" was not litigated in Plaintiff's criminal case.**

---

[2] As for the coercion claim, Plaintiff has standing to contest the voluntariness of the "confession" under basic rules of due process. To deny him the ability to challenge it while saying that he is simultaneously bound by an interrogation that he was not part of would place Plaintiff in a legal no-man's-land in which he can be subject to constitutional violations with no recourse.

Plaintiff's criminal attorney did not file a motion to suppress or argue voluntariness.

### 2. Michael was denied a full hearing on the motion to suppress because he did not have access to critical evidence.

Issue preclusion should not apply when a party is denied the opportunity to litigate an issue fully or where there are other reasons to relitigate a prior decision on an issue. *Kyricopoulos v. Orleans*, 967 F.2d 14, 16 (1st Cir. 1992). This case is the posterchild of that lack of opportunity because Michael was forced to litigate the suppression motion without the evidence to do so.

As more fully identified in Plaintiff's opposition, during Michael's criminal case, he was not provided with the necessary facts to contest his confession. One fact that Plaintiff and Defendants agree on here is that Giroux was a murder suspect before Michael "confessed." But the following facts related to Giroux were hidden by Defendants: (1) Giroux was bloody on the night of the murder; (2) written details about a man in the victim's apartment matching Giroux's general physical description; and (3) Giroux was a police informant who was not fully investigated.

In addition, Michael did not have the benefit of the DNA evidence available years later. If Michael had not tragically died in prison and been granted a motion for new trial (for the same reason that Plaintiff was), it strains credulity to believe that in any retrial a criminal court would not have allowed him to contest the voluntariness of his confession by introducing the DNA evidence. That evidence would demonstrate that the "confession," which did not mention the true murderer, was false. The same should be true for Plaintiff here.

## II. Defendants Had Obvious Reasons to Doubt that Plaintiff was the Murderer and a Duty to Investigate/Inquire Further

Defendants Liberto and Small, the two Milford officers assigned to the Schiappa murder investigation, had a duty to investigate further because there were substantial reasons to doubt the credibility of Michael's statement. *See Chapman v. Finnegan*, 950 F. Supp. 2d 285, 296 (D. Mass. 2013). These reasons go well beyond the "modest degree" required. *See United States v. Tanguay*, 787 F.3d 44,

54 (1st Cir. 2015).

As outlined in Plaintiff's opposition, both Small and Liberto expressed doubt about Michael's statements. In fact, they were told similar things by Michael when transporting him for an involuntary mental health commitment a few months before but admitted that they believed that Michael would say whatever he thought someone wanted to hear. In *B.C.R. Transport Co. v. Fontaine*, 727 F.2d 7 (1st Cir.1984), the First Circuit concluded that a jury could find no probable cause when police relied on an incoherent person's allegations. Similarly, the First Circuit suggested that such a duty may arise "'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *Tanguay*, 787 F.3d at 54 (quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir.2002) (additional citations omitted)).

On top of this knowledge, was Liberto's hidden information that the true murderer (who matched the undocumented description given to Small) was bloody the night of the murder. The combination of this information gave Liberto and Small a duty to further inquire about whether Giroux was the culprit. A jury could reasonably find that this knowledge created the proverbial "red flag" to doubt the evidence against Plaintiff and his brother based on the totality of circumstances, thereby triggering the need for further inquiry. *Id.* (citations omitted).

### III.    CONCLUSION

Plaintiff's claim that Michael's "confession" was fabricated by Defendants is a stand-alone claim that does not require a finding of voluntariness. Regarding whether it was voluntary, Plaintiff should not be bound by the motion to suppress decision in Michael's case, which was based on an incomplete record that would not stand up today if Michael had not died in prison and had been granted a new trial as Plaintiff was. Finally, Defendants Small and Liberto had substantial reason to doubt Michael's confession and to further investigate the true murderer. Summary judgment is not warranted here.

**RESPECTFULLY SUBMITTED,**

**GARY CIFIZZARI**

By: /s/ Mark Loevy-Reyes
*One of Plaintiff's Attorneys*


Attorneys for Plaintiff
Mark Loevy-Reyes, BBO No. 707974
Loevy & Loevy
398 Columbus Avenue, #294
Boston, MA 02116
P: (312) 243-5900
F: (312) 243-5902
mark@loevy.COM

William S. Smith, Esq.
THE LAW OFFICE OF WILLIAM S. SMITH
206 Worcester Road
P.O. Box 585
Princeton, MA  01541
P: (774) 317-9287


**CERTIFICATE OF SERVICE**

I, Mark Loevy-Reyes, an attorney, hereby certify that on June 3, 2025, I filed the foregoing using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Mark Loevy-Reyes
*One of Plaintiff's Attorneys*